IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GABRIEL VAUPELL,

      Plaintiff,                        No. CIV S-10-0022 EFB

  vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                   ORDER
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons discussed below, the court grants plaintiff's motion, denies defendant's motion, and remands the case for further proceedings consistent with this opinion.

I. BACKGROUND

      Plaintiff, born July 20, 1974, formally applied for DIB and SSI on October 12, 2006 and October 27, 2006. Administrative Record ("AR") 17, 25. Plaintiff's application alleged that he had been disabled since September 26, 2006. *Id.* at 17. His application was denied initially and upon reconsideration, and he requested an administrative hearing. *Id.* On October 7, 2008, a hearing was held before administrative law judge ("ALJ") Mark C. Ramsey. *Id.* Plaintiff was

1

represented by counsel at the hearing, and he and his mother testified. *Id.*

The ALJ issued a decision on March 25, 2009, finding that plaintiff was not disabled prior to September 8, 2008, but became disabled on that date.[1] *Id.* at 17-27. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since September 26, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. Since the alleged onset date of disability, the claimant has had the following severe impairments: diabetes mellitus (DM), diabetic peripheral neuropathy, neuropathic pain, and diabetic retinopathy (20 CFR 404.1520(c) and 416.920(c)).
>
> ***
>
> 4. Prior to September 8, 2008, the date claimant became disabled, the claimant did not have an impairment or combination of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

***

5. Prior to September 8, 2008, the date claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except performing jobs requiring close detail work.

***

6. Prior to September 8, 2008, the claimant was unable to perform past relevant work (20 CFR 404.1565 and 416.965).

***

7. The claimant was born on July 20, 1974 and was 32 years old, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to September 8, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

***

11. Beginning on September 8, 2008, the severity of the claimant's VA of 20/400 on the right and vitreous hemorrhage left eye with VA of 20/150 has met the requirements of section(s) 5.02 of Appendix I.

***

12. The claimant was not disabled prior to September 8, 2008 (20 CFR 404.1520(g) and 416.920(g), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(d) and 416.920(d)).

3

*Id.* at 17-26.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on November 25, 2008, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1-3.

## II. ISSUES PRESENTED

Plaintiff contends that the ALJ erred in (1) failing to correctly apply SSR 83-20 to determine the onset date of his disability; (2) failing to credit the opinion of plaintiff's treating physician; (3) failing to find his testimony credible; and (4) failing to find that his depression constituted a severe impairment. *See* Dckt. No. 16.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4

IV. <u>ANALYSIS</u>

Plaintiff contends that the ALJ erred in determining the onset date of his disability. Specifically, plaintiff argues that the ALJ did not properly apply SSR 83-20, and erroneously discredited the opinions of plaintiff's treating physicians, plaintiff's testimony, and plaintiff's mother's testimony regarding the onset date of his disability.

As noted above, plaintiff claimed that his disability onset date was September 26, 2006, the date that he quit his construction job. However, the ALJ found that prior to September 8, 2008, when plaintiff's vision problems worsened, he was able to perform sedentary work (except for jobs requiring close detailed work). *Id.* at 20. Thus, the ALJ determined that plaintiff's disability onset date was September 8, 2008, when his treating ophthalmologist found that he had a new vision impairment, and he met the statutory criteria for blindness. *Id.* at 26.

Regarding the plaintiff's pre-September 8, 2008 RFC, the ALJ wrote:

> The claimant alleges disability due to right eye blindness, glaucoma, chronic pain, diabetic neuropathy, foot pain and swelling, and DM (Exhibits 2B, 6B, & 1E-14E).
>
> ...the claimant's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible prior to October 10, 2008, to the extent that they are inconsistent with the residual functional capacity assessment as explained below.
>
> In terms of the claimant's alleged complaints, the medical evidence documents since May 12, 2006 through September 4, 2008 the claimant has been treated at the UCD Medical Center for neuropathic pain, DM with neuropathy, nonproliferative diabetic retinopathy of the eyes, myopia and astigmatism of the eyes, leg and foot pain, sinus tachycardia, constipation, right shoulder pain, hypoglycemia, hand and foot pain, scrotal pain, kidney pain, eye floaters, light sensitivity, Charocot foot due to DM, glaucoma, cellulitis, and right foot infection.
>
> ...
>
> The State Agency (SA) determined in December 2006 the claimant could perform sedentary work, avoiding moderate exposure to hazards and jobs requiring more than limited near acuity (Exhibits 6E & 2F-3F) and affirmed the determination in

May 2007 (Exhibit 6F).[2]

...

The undersigned now considers the claimant's subjective complaints as required by the Regulations and Social Security Ruling 96-7p, noting that he alleges right eye blindness, glaucoma, chronic pain, diabetic neuropathy, foot pain and swelling, and DM. He testifies that his daily activities including changes linens, vacuuming occasionally, cooking light meals, and walking his service dog.[3] He testified that his blood sugar is not stable at times, and he bottomed out two months ago. He has eight to ten surgeries and several laser surgeries. He alleged intense foot and hand pain, flank pain and night sweats, and that the pain has worsened in the last two years, with s (sic) service dog helping. He alleged that standing and walking causes foot pain and hand pain affects his ability to walk and stand. Lastly, he alleged having vision, diabetes complications and pain issues weekly.

The record documents his daily activities did include grocery shopping, driving, and doing light household chores (Exhibit 3E).[4]

...

The undersigned prior to September 8, 2008 does not find his vision complaints to be fully credible and his other diabetic complaints less than fully credible at all times since his alleged onset date as the SA determined in December 2006 the claimant could perform sedentary work, avoiding moderate exposure to hazards and jobs requiring more than limited near acuity (Exhibits 6E & 2F-3F) and affirmed the determination in May 2007.

UCD Medical Center records further undercut his complaints as examinations revealed his VA ranged from 20/20 for both eyes to 20/400 or counting fingers on the right to 20/80 on the left prior to September 8, 2008. Additionally, examinations revealed only borderline tachycardia, right trapezius area trigger

---

[2] In fact, a state agency medical professional originally opined on December 4, 2006 that plaintiff could perform "*light* activities with visual limits only." AR 252 (emphasis added). On May 24, 2007 another state agency professional wrote "I have reviewed the entire file including the initial MER and all recon MER sources and I have affirmed the Sedentary RFC as written." *Id.* at 324.

[3] At the hearing, plaintiff actually testified that he did *not* change the sheets on his bed; he had vacuumed "a couple of times, but not often"; he did "light prep" in making food, such as heating ready-made pizzas in the oven; and he walked his service dog for "pretty short" walks. AR 52-55.

[4] This reference is to plaintiff's undated "Exertional Daily Activities Questionnaire" which was filled out when he still lived with his son's mother. Plaintiff wrote that he did "very light chores compared to the wifey"and that he drove "not super far and not by myself so the wifey can spell me when I get overwhelmed." He stated that he had difficulty finishing housework because of his pain. AR 155-56.

point, eye floaters, vitreous hemorrhage of the left eye, decreased dorsalis pedis pulses bilaterally, decreased hair growth of the lower extremities, decreased dorsalis pedis pulses, and right foot erythema, swelling and tenderness. Diagnostic testing indicated an EKG showed sinus tachycardia, an abdominal and renal ultrasound August 10, 2007 was unremarkable, a Holter resulted in a conclusion of normal sinus rhythm with rare PVCs and PACs, and a three-phase bone scinitgraphy of the feet July 7, 2008 revealed only increased radiotracer uptake in the right second, third, fourth metatarsal heads and at the right first tarsal-metatarsal junction with findings nonspecific. Chart notes documented examinations revealed on multiple times he demonstrated good strength and coordination; September 13, 2006 he was well appearing and in no obvious distress; October 12, 2006 he had trouble with a pump for his DM due to being so active and thin;[5] November 13, 2006 sensory was improved, demonstrated good strength and had increased perception of touch of the feet and reported he had occasional blurry vision and described energy level as "pretty excellent;" December 20, 2006 he reported pain from his neuropathy in both legs at 3/10 in severity; December 27, 2006 he reported Cymbalta helped his neuropathy; January 10, 2007 he reported pain 4/10 in his legs from neuropathy; November 29, 2007 assessment following evaluation was history of diabetic peripheral neuropathy that appeared to be well controlled on current medication regimen; June 3, 2008 Dr. Telander reported the claimant was recovering from ocular surgery performed May 21, 2008 and was currently visually impaired and required assistance with reading and writing and needed to wear tinted glasses under certain lighting conditions while indoors as he was light sensitive but identified no other limitations; and September 11, 2008 he had acquired a service dog as opposed to a Seeing Eye dog (Exhibits 1F, 4F-5F, 7F-9F, & 11F-15F).

...

Given the preceding factors, his DM complaints were only partially credible and his visual complaints prior to September 8, 2008 were also only partially credible.

As for the opinion evidence, the undersigned afforded great weight to the SA determinations which are supported by treating records and the claimant's daily activities as to his DM and visual capability prior to September 8, 2008.

Dr. Gocke's medical opinion of September 27, 2007 was given minimal weight as he did not specify any functional limitations or what medical problems prevented the claimant from working; the opinion was not supported by UCD chart notes or by the claimant's daily activities; and the opinion was inconsistent with the SA determinations.

AR 21-24.

---

[5] Although the ALJ seems to imply that plaintiff's thinness was a sign of good health, plaintiff's mother testified that plaintiff was 30 or 40 pounds too light and was "deteriorating so rapidly" when he moved in with her that she asked a doctor "if we needed to possibly consider HOSPICE, that's how seriously ill he was." AR 72.

7

The ALJ failed to properly determine the onset date of plaintiff's disability because he did not give proper weight to the opinions of plaintiff's treating physicians. SSR 83-20 provides that for disabilities of nontraumatic origin, the determination of the onset date involves consideration of the applicant's allegations, work history, and medical and other evidence concerning impairment severity. The regulation states that the plaintiff's statement as to when the disability began is "[t]he starting point" of the analysis, and that the date that the impairment caused the individual to stop work is "frequently of great significance." However, "medical evidence serves as the primary element in the onset determination."

In this case, the parties agree that plaintiff's allegation as to the onset date of his disability coincides with the day he stopped working, that is, September 26, 2006. The parties disagree as to whether substantial medical evidence supports the ALJ's determination of the later onset date. The court finds that the ALJ's analysis of plaintiff's disability onset date was flawed, as he failed to give proper weight to plaintiff's treating physicians' opinions.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.* To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

////

1    In addition, an ALJ must set out in the record his reasoning and the evidentiary support

2 for his interpretation of the medical evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th

3 Cir. 1999).

4    Plaintiff notes that regarding a September 27, 2007 follow up visit, Dr. Gocke wrote:

> he had some issues with his glaucoma and he has had a lot of pain . . . . [Percocet] was very effective not only for his eye but also for his neuropathic pain. He has been taking Percocet two tablets and then he was also taking Norco for breakthough pain and I have talked to him about getting on some long acting medications and he is willing to try this. We talked about how to use these medications at length and he feels comfortable with this. He also wants to get the Lyrica . . . He is on Neurontin for now . . . In addition he is going to follow up with opthalmology regarding his eyes. Obviously he is not able to work due to all of these medical problems. He is still trying to get SSI for this.

AR 279.

Regarding Dr. Gocke's opinion, the ALJ wrote:

> September 27, 2007 Dr. Kama Gocke indicated the claimant was not able to work due to all of his medical problems.
>
> ...
>
> Dr. Gocke's medical opinion of September 27, 2007 was given only minimal weight as he did not specify any functional limitations or what medical problems prevented the claimant from working; the opinion was not supported by UCD chart notes or the claimant's daily activities; and the opinion was inconsistent with the SA determinations.

*Id.* at 22, 24. Plaintiff also notes that Dr. Kreis, plaintiff's pain medicine doctor, wrote on

September 13, 2007:

> The pain is present frequently (75% of the time) . . . The pain intensity is currently rated as a VAS of 10 . . . . The average pain for the last week has been a VAS of 9/10 . . . .
>
> ...
>
> The patient is currently permanently disabled. The patient's employment has been affected by the present pain condition. The patient's current occupation is a carpenter and other service jobs which he had to discontinue secondary to his pain.

*Id.* at 992-94. The ALJ's opinion does not mention this record or Dr. Kreis.

9

1    The ALJ failed to give proper weight to Dr. Gocke's opinion that plaintiff was unable to
2 work due to his medical problems, and failed to acknowledge Dr. Kreis' opinion that plaintiff
3 was disabled by his pain. The only opinions in the record finding that plaintiff was able to work
4 were those of the state agency non-examining professionals, who never met, examined or treated
5 plaintiff and formed their opinions–that he was capable of, respectively,"light activity" with
6 visual limitations and sedentary work–solely on the basis of reviewing his records. *See* AR 251-
7 52, 323-24. These opinions were written in December 2006 and May 2007, months before Dr.
8 Gocke and Dr. Kreis' opinions, and more than a year before the date that the ALJ found plaintiff
9 became disabled.[6] Under Ninth Circuit law, these non-examining opinions are insufficient to
10 reject the opinions of plaintiff's treating doctors. *See Lester*, 81 F.3d at 831.
11    The ALJ also gave the following reasons for rejecting Dr. Gocke's opinion: 1) he did not
12 specify any functional limitations or what medical problems prevented the claimant from
13 working; 2) the opinion was not supported by UCD chart notes; and 3) the opinion was not
14 supported by the claimant's daily activities. None of these are "clear and convincing" reasons.
15 First, although Dr. Gocke's opinion does not appear on a social security form and therefore does
16 not explicitly list functional limitations, he notes plaintiff's pain and vision problems, then states
17 that plaintiff is unable to work "due to all of these medical problems." Thus, Dr. Gocke implied
18 that the combination of plaintiff's pain and eye problems prevented him from working. Second,
19 the ALJ does not convincingly explain his assertion that Dr. Gocke's opinion is not supported by
20 "UCD chart notes." The administrative record for this case is over 1,400 pages, and medical
21 records from the UC Davis Health System constitute a significant portion of the record. It is not
22 clear which chart notes the ALJ found contradicted Gocke's opinion. One paragraph in the
23 ALJ's opinion begins, "UCD Medical Center records further undercut his complaints," but notes

---

[6] The state agency opinions do not appear to have been prepared by doctors. The December 2006 opinion is first signed by "S.M. Espiritu" and contains a mere notation "Agree with your RFC, I signed" by a Dr. Pong. AR at 252. The May 2007 opinion "was prepared by Jerry Collins," but signed by an M.D. *Id.* at 324.

10

only the following regarding plaintiff's pain and neuropathy: on various occasions, plaintiff reported that pain from his neuropathy was a 3/10 or a 4/10; the pain was helped by Cymbalta; plaintiff's peripheral neuropathy appeared to be well controlled on his current medical regimen; and plaintiff was feeling better off of narcotic pain medications.[7]  While some of these notations may constitute evidence for a later disability onset date, they do not by themselves constitute clear and convincing reasons for rejecting his treating physician's very clearly stated and supported opinion.  Finally, as noted above, the ALJ's summary of plaintiff's daily activities is partially factually inaccurate, and plaintiff's ability to heat ready made food and take his service dog on short walks, and his former ability to drive for short distances accompanied by someone else, do not constitute clear and convincing reasons to reject his physicians' opinions that he was unable to have a full time job.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits.")

Moreover, the ALJ failed to address Dr. Kreis' opinion that plaintiff was disabled, or articulate any reasons for rejecting it.

Defendant argues that the ALJ properly rejected Dr. Gocke's opinion because it was contradicted by the opinion of plaintiff's specialist treating physician, Dr. Telander.  Dckt. No. 20-1 at 10-11 ("Plaintiff appears to argue that the ALJ should have given greater weight to Dr. Gocke's September 27, 2007 statement than to Dr. Telander's September 8, 2008 report.").  But the argument is difficult to comprehend, as these doctors' opinions do not conflict.  Dr. Telander noted on September 8, 2008 that plaintiff's vision had decreased to 20/400 in the right eye and 20/150 in the left.  AR 1317.  Nothing in Dr. Telander's report is inconsistent with Dr. Gocke's opinion that plaintiff was unable to work the previous year.  Therefore, the ALJ could not reject Dr. Gocke's opinion by relying more heavily on Dr. Telander's opinion.

---

[7] This medical record shows that plaintiff was still taking Lyrica and Cymbalta on a daily basis.  AR 358-59.

11

1  Defendant also argues that Dr. Gocke's comment that plaintiff could not work should not
2  be considered an "opinion," because disability is an administrative finding reserved to the
3  Commissioner.  But the ALJ recognized Dr. Gocke's statement as an opinion.  *See id.* at 24.
4  ("Dr. Gocke's medical opinion of September 27, 2007 was given only minimal weight").
5  As the ALJ failed to properly consider plaintiff's treating physicians' opinion regarding
6  the onset date of his disability, this case must remanded for further proceedings.  Thus, the court
7  does not reach the remainder of plaintiff's arguments.

V. CONCLUSION

The court finds that the ALJ's decision is not supported by substantial evidence in the based or the proper legal standards.  Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The case is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: February 16, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE